When the Supreme Court stayed the initial injunction in this case, it struck an equitable balance between the government's national security interests in excluding certain aliens abroad and the interests of certain U.S. persons in their relationships with those aliens. The Court thus limited the injunction to only those aliens who have either a close familial relationship with a U.S. individual or a formal, documented, ordinary course relationship with a U.S. entity. Does the Supreme Court order, say, familial? Yes. Does it use that word? It says close familial relationship is required. That is the standard that the Supreme Court articulated for the requisite relationship with individuals. For entities, the standard was a formal, documented, ordinary course relationship. So as I was saying, the district court's modified injunction essentially rewrites those limits in a way that upsets the balance that was struck by the Supreme Court. Let me ask a question, if I may. So if a close familial relationship is what's needed for an individual, how can the government take the position that a grandmother or grandfather or aunt or uncle of a child in the U.S. does not have a close familial relationship? What universe does that come from? Your Honor, the government doesn't dispute that many people have a profound connection with their grandparents, and we don't even dispute that in ordinary speech and sometimes in even some legal contexts, one might refer to grandparents and either other extended family members as close. But the question in this legal context is when the Supreme Court adopted a standard of close family members as the standard for a stay from an injunction, what did the court mean in that context? And in that context, we think there are two attributes that suggest a narrower definition. The first is the need for an administrable definition, one that's not based on just intuition or cherry-picking statutes, but is instead based on a line that can be drawn and that was clear to the government from the moment the court ruled. And the second is... Where in your... Mr. Mupan? Yes. I don't recall reading in your brief an administrative distinction that you're just alluding to right now. Well, so it ties into the second reason I was going to say, Your Honor, which is we think that what the court had in mind in this legal context is that the court was thinking primarily of the close family relations that the government articulated as a ground for waiver from the EEO. The court actually pointed to that, the waiver provisions, when describing equitable balancing and said that that was one of the factors it was looking to, and those close family relations were in turn derived from the INA provisions that govern immigration preferences for immigration visas. And... So you weren't suggesting that... When you use the term administrative, you weren't suggesting it would just be administratively easier to draw these distinctions the way you have, the way the government has? Well, we're suggesting that that is one additional reason why it makes sense to look to the EEO and the provisions of the INA that govern immigrant visas, because that provides... But just to follow up on Judge Gould's question, could you explain to me what's significantly different between a grandparent and a mother-in-law, father-in-law? What is so different about those two categories? Well, so to start with the mother-in-law... One is in and one is out. Well, to start with the mother-in-law piece, Your Honor, the reason that the law recognizes in-law relationships more generally is a recognition that when two people get married, they form a spousal unit, and that in a very real sense, your spouse's family becomes your own family. And once you recognize that that is what the in-law relationship is about generally, then the mother-in-law is really still only one step removed from the family unit. And that is a meaningful difference from grandparents and aunts and uncles and nieces and nephews and cousins, all of whom are more than one degree removed from the core family unit. And Congress has recognized this judgment in a variety of areas. There are a whole host of provisions of the INA, first and foremost, the provisions that govern immigrant visas, but a bunch of others that we've cited in our briefs, none of which recognize grandparents, let alone aunts and uncles and nieces and nephews and cousins, as being covered as close family. The INA repeatedly reflects a judgment drawn by Congress that close family, that immediate family, refers to things like parents and siblings and children and spouses, but no further. So a grandparent living in the United States, let's suppose for the purpose of this hypothetical that that person's a citizen who has a child and grandchildren living in one of these six countries and the child is killed in a terrorist attack, you would still define that relationship as strained as opposed to a mother-in-law? I wouldn't say it's strained. I would just say that in the context of a legal definition of close family, I would not say that the court intended to pick that up. Well, in the hypothetical, the family has just been made close by the loss of the child. Again, Your Honor, we recognize that often extended family plays an important role in a family unit, but that doesn't mean that for a legal definition of close family that that would count. And Congress themselves have recognized that because even on your hypo, if you flip it that would not allow the grandchild to seek their grandparent's entry even on those circumstances. Congress has typically referred to close family to refer to parents, children, spouses, and siblings. And the fact that we've also covered mother-in-laws because the Supreme Court said that the mother-in-law was covered and because that mother-in-law relationship reflects the fact that a family unit, once you're married, your spouse's family becomes your family. That one fact can't be enough to let the plaintiffs pick up not just grandparents, Your Honor, but aunts and uncles and nieces and nephews and cousins. That is just far too much weight to put on the fact that mother-in-laws, mothers-in-law are covered. Mr. Mugent, the Supreme, you're right. At the very beginning when Judge, I think it was Judge Gould maybe, the term that the correct? That's correct. Now doesn't the INA and the provisions that you cite in your brief refer to immediate relatives? So in one of the provisions it does. Do those terms have the same meaning in your view? I would say that immediate and close are. But if you think there is some difference, we've also pointed to other provisions in the INA that use the phrase close family in the way we have done it. For example, the exemption from inadmissibility, there's the only time in the exemptions from inadmissibility that Congress actually used the phrase close family relationship. It covered only parents, spouses, children, and sibling. None of the other relationships that plaintiffs have covered here. But you think that if the Supreme Court intended to define this so narrowly that they would have used one of the, a term closer to what's in the INA than close familial relationship? Your Honor, it's hard to intuit what the Supreme Court might have thought, but the Supreme Court certainly didn't use any of the definitions that plaintiffs are urging in the district court adopted. We just don't think it is an admissible rule to say that we won't be bound by any sort of INA provision. We won't be bound by any sort of case provision. Close family relationship will have to be determined on an ad hoc basis based on what people's gut intuitions are about what family is sufficiently close. I think it's important to recognize that plaintiffs can't identify a single source of authority that picks up all of their relations all in one place. Not one. First of all, most of their, virtually all of their provisions and none of their immigration provisions covers cousins. Not a single one. The only authority they cite for cousins is a domestic case involving which family members can live in a house together. But even setting that aside, most of their provisions don't pick up all of grandparents, grandchildren, aunts, uncles, nieces, and nephews. They can only get there by going through a hodgepodge of INA provisions and regulatory provisions and other sources of authority. And that just cannot be and is not an appropriate way of interpreting the Supreme Court's day. Counsel, let me ask you a question from another angle here. The Supreme Court was concerned with hardship that would be felt by someone in the U.S. who couldn't have a close family member visit, as I understood their equitable analysis. So let's say you have an immigrant who's now a U.S. citizen or a lawful permanent resident, and they have a child. But the grandparent of the child is in one of the countries that was excluded by the executive order. Doesn't it impose a hardship on that immigrant or lawful permanent resident to say the grandparent can't visit with them? Your Honor, the court was drawing a striking equitable balance. The court did not adopt a test that as long as there's any hardship at all, the alien can come in. That's clear from the test that the court adopted, which is limited to close family for individuals and is limited to certain entity relationships. It is entirely possible that there are relationships that fall outside that where there would be hardship. For example, an individual who's as a business partner abroad, not letting the business partner come in would quite likely impose hardship on the individual. But there's simply no dispute that that person is not covered by the Supreme Court's day. This just sort of underscores that the Supreme Court didn't adopt a any harm at all means that you're outside of the stay. The court drew an equitable balance, and the balance it drew was between close family and all others. And close family has to have some meaning. It can't just mean all family except the most distant, and it can't be a standard that's drawn from no legal source of authority, and it's just based on intuition. This is an injunction that the government has to comply with, and the test that should be adopted should be a clear one and an administrable one. Okay, thank you. Let me turn to the refugee assurance piece quickly. On the refugee assurance piece, the refugee assurance does not create any relationship between the resettlement agency and the refugee. It's a relationship between the resettlement agency and the government. Indeed, the agency typically has no contact with the refugee until the refugee enters this country. Moreover, including refugees within the injunction would drain the Supreme Court's stay of all practical effect, because the number of refugees with the assurances exceeds the likely number of refugees who would be scheduled to enter before the suspension expires. It's about 24,000 now, isn't it? As of June 30th, I believe, Your Honor. And when we made both of those points to the Supreme Court, that there is no relationship and it would drain the stay of all meaning, the Supreme Court unanimously stayed this piece of the injunction, and plaintiffs have not identified any new counterargument that undermines the Supreme Court's determination that we are likely to prevail on that issue. And so I think that by itself is basically dispositive of the refugee assurance piece. Counsel, is there any circumstance in which the government would consider a refugee to have a bona fide relationship with the U.S.? Well, certainly if they had a close family member in the U.S., and that has happened, I believe, upwards of 900 times already, Your Honor. And it's also possible that a refugee could, in certain circumstances, have a relationship with a U.S. entity. Our submission here, and the only issue that's presented, is whether the mere fact of an assurance from a resettlement agency is sufficient by itself to create that relationship. And our point is that the assurance by itself does not create a relationship because it is only a relationship between the resettlement agency and the government, not a relationship between the agency and the refugee. So, Mr. Mupin, could I ask you a question on this line, along these lines? Where in the Supreme Court's order does it talk about a direct relationship? The word direct doesn't appear, Your Honor, but what the court does say— Well, the answer to the judge's question is nowhere. That's fair, Your Honor, but our point isn't that the relationship here is not direct. Our point is that the relationship is nonexistent. There is no relationship between the refugee and the resettlement agency that is created by the assurance. The assurance is only an agreement between the agency and the government. So it's not a question of whether it's a direct relationship or an indirect relationship, and we acknowledge that if an alien had a relationship with a U.S. entity indirectly through an intermediary, that would count. And some of the examples that the court gave— Why isn't that just what you have right here? Because there is no intermediary. Isn't the refugee a clear beneficiary of this arrangement? And at some point in the process, particular refugees are identified and made known to the local agency in the United States. Isn't that right? That's right, but the fact that they're a beneficiary of the relationship does not mean that the relationship is with them. They're just not some random person out there. I didn't say that they were, but the question is whether they're— Well, that's what you're suggesting. That's all that they are. No. The question under the Supreme Court standard is whether there is a relationship with the alien. And what I'm suggesting is that the resettlement agency does not have a relationship with the alien. It has a relationship with the United States government. It is about the alien. If I could give you a hypothetical— Maybe you wouldn't agree. But isn't this scheme—doesn't it demonstrate a formal, well-documented relationship? It is formal and documented, but there's a relationship between the resettlement agency and the government. Or the benefit of a particular refugee. Or the benefit, but not with. The standard is whether there's a relationship with the— Well, I guess it's back to my original question. Where in the Supreme Court's order does it require a direct— I'm not making an argument about direct. I'm making an argument about with. And the Supreme Court's opinion does say that it has to be a relationship with. Let me ask one other question along this line. The court talked about an example of the professor who goes to a university to give a speech in the United States, right? Yes. Isn't it common and—or it's not uncommon for a person like that to come through a particular agency indirectly? Right. And that's why I said— Right. And that's why I said earlier, Honor, that if the relationship between the alien on the one hand and the U.S. entity on the other hand is they have a relationship but it's through an intermediary, we're not disputing that that would be covered. But that is not what an assurance is. An assurance is a relationship between the agency on the one hand and the United States government. And the agency—the refugee is not part of that relationship. It is about it, to be sure. But let me give you a hypothetical that I think will underscore this. If the United States government contracted with a tour bus company to say that every refugee when they got here would get a guided tour of the city that they were going to move into, that would certainly be for the benefit of the refugee. But I don't think anyone would say that the refugee had a relationship with the tour bus company. Now, to be sure, what a resettlement agency does is far more meaningful and far more significant than a tour bus company. But at the end of the day, it is no more of a relationship with the refugee. It is a relationship with the government about the refugee. And again, Your Honor, if you think there's any doubt about this, I think it's eliminated by two points. One is that it would render the Supreme Court stay completely meaningless because every—the number of refugees who have assurances exceeds the number who would be admitted before the travel suspension expires. And two, the Supreme Court has already stayed this aspect of the injunction, reflecting that they themselves believe that there's a likelihood that we will prevail on this issue. Are we—go ahead, Judge Hawkins. I was just going to ask if counsel wanted to save some time for rebuttal, which he said he did. I just have one further question. Did the Supreme Court say refugees don't count? No. Couldn't they have said that if they meant that? Well, but we're not saying that refugees don't count. We've already—we've recognized over 900 refugees who have a bona fide relationship in the sense that they have a close family member here or potentially if they have a relationship with an entity. There's a—the refugee piece of this is a very narrow question but a very important one. It's whether an assurance by itself means that there is a bona fide relationship. Our submission is that assurance— It's not just an assurance. They've been approved for participation in the program by an agency of the United States government, right? Well, again, that's a relationship with the United States government. It's not a relationship with a U.S. entity. The United States government does not need the benefit of the injunction. The United States government's interest is in excluding the aliens based on the national security determinations that the president made. The question under the stay is whether there's a U.S. entity that has a countervailing interest in the equitable balance, and the settlement agencies here do not have a countervailing interest. They are the government's agents. They are not a third party who has an interest separate and apart from the government's. If I could save the remainder of my time. May it please the Court, Colleen Sinzdak for the appellees. There's a button there. You can lower the podium if you'd like. I think I may take advantage of that. Is that better? If it's better for you. That's great. Thank you. Two months ago, this Court joined its sister circuit in affirming a preliminary injunction against an unlawful and unconstitutional order. We just said it was unlawful. We didn't say it was unconstitutional. That's right. Your sister circuit said that it was unconstitutional. Now the government returns to this Court asking for permission to enforce that order to the maximum extent possible, based on a distorted understanding of the language and the rationale of the Supreme Court's order. The Supreme Court did not, as the government claims, draw arbitrary lines based on a cramped understanding of the term relationship and based on inapt provisions of the INA. To the contrary, the Supreme Court issued a limited stay order sounding in principles of equity and practicality. With respect to equity, the Supreme Court held that when a foreign national has a relationship with an individual or an entity, the harm inflicted by her exclusion outweighs the alleged harms that the government asserted. But the Supreme Court recognized a need to speak in, quote, practical terms. It recognized a danger that Americans would form relationships in order to evade the executive order. It therefore limited the pool of qualifying relationships. For individuals, it must be a close familial relationship. For entities, it must be a relationship that is formal, documented, and formed in the ordinary course with a, quote, particular person. So the tour bus company hypothetical is out, right out of the gate. But taken together, what these principles do ensure is that the preliminary injunction continues to protect refugees with bona fide relationships with entities in the United States and individuals in the United States. That is, relationships that are formed in good faith, not to evade the executive order. Each and every one of the individuals whose exclusion we are considering today meets the standard the Supreme Court articulated. The arguments that you're hearing from the government are importing new standards, not from the Supreme Court's order, but of the government's own invention. So to begin with the families, the government claims that it needs this administrable standard based in part on INA provisions with the addition now of mothers-in-law. What it declines to look at is the Supreme Court's own understanding of what constitutes a close familial relationship, as articulated in cases such as Moore and Reno, where the Supreme Court held that traditionally a family includes individuals such as grandparents, aunts, uncles, nieces, and cousins. This is not an arbitrary line that plaintiffs have invented, but one drawn directly from the Supreme Court. Ms. Simsack, could I ask you a question here? Certainly. At this point. Do you think that the Supreme Court's language in their order when they were talking about waiver? Yes. And after reading the government's brief, do you think that the government was suggesting that with respect to these close familial relationships, that there really should be an individualized assessment as to the particular familiar member that you're dealing with? Maybe there's a difference between cousins and grandparents? No, I think first of all, again, the standard which includes grandparents, aunts, uncles, nieces, nephews, and cousins comes from Moore. But I think the notion that there would be this case-by-case assessment would actually undercut the government's own pause because screening individual refugees, screening individual would-be immigrants, would be too much of an administrative burden while it was upgrading its screening procedures. So the notion that the Supreme Court would have issued a stay order demanding this individualized case-by-case examination stretches credibility. And I'd also point out, the government continually says the Supreme Court discussed the waiver provisions. That's right, but only in saying that there is a distinction between those with a relationship to the United States and those that lack any such relationship. It was not saying you should import those waiver standards, and for good reason. The waiver provisions in the executive order that the government wishes to apply, those apply, they're purely discretionary, so there's never a need for a waiver. And they apply only where it's in the national interest to have that particular foreign national enter. So that's a very high standard when the Supreme Court actually held that those with close family relationships must be protected by the preliminary injunction. The waiver really offers no protection at all. There is a, isn't there, a basic difference between individuals seeking to enter as an immigrant and those as a refugee, isn't there? Certainly there is a different process. The refugee process, actually, I believe the refugees are some of the most screened individuals that enter. I'm not talking about screening. In the absence of the executive order, a person seeking an immigrant visa could, vis-a-vis our opinion, rely upon Section 1152 and say, I'm applying for an immigrant visa, and I ask that it be granted without respect to nationality. I have a statutory right to seek it, whereas a refugee has no firm basis in the law to do that, do they? It's permissive. Pardon me. Under this Court's own opinion, the executive order does violate the refugee provision of the law. It does not violate Supreme Court, so when they hear the case in a couple of months on the merits, they can make an appropriate decision. I agree, and I think the easiest way to do that is to look at what exactly the Supreme Court said. So in its section where it discussed, in particular, Section 6A and Section 6B, it did set out exactly who should be permitted to continue to enter the United States as a refugee. It did not set out who should be granted a visa to an individual or entity in the United States, such that their exclusion would inflict a concrete hardship on the American individual or the American entity. So I think it's a difficult task, but the Supreme Court has really gotten us there by announcing that standard, which the district court then appropriately applied to refugees with these formal assurances, who do indeed have a bona fide relationship with their resettlement, with their immigration status, with an organization, and whose exclusion inflicts concrete harms on that organization by way of the wasted funds that are being used right now to prepare for their welcome, and in terms of the intangible harm that occurs when a person that you are preparing to welcome into your community is excluded. So I think the task is, if you simply apply the words of the Supreme Court's order, the task is not particularly difficult. So would the United States, irrespective of the travel bans or stays in these cases, stop the refugee process for a year or two? That legal question is not before the court, and I believe that... I understand that. And in fact... The government does possess that power, doesn't it? I'm not sure that the President alone possesses that power. Congress set out... Ask about the President. I asked about the government. If we were perhaps dealing with Congress, again, I don't want to make legal pronouncements about a different case, but certainly Congress has a large degree of control and would be able to make that determination. Without repealing 1152, they couldn't tell people that they couldn't apply for an immigrant visa because of the country that they come from. Without altering the statutes, but I would say that without altering the statutes, you couldn't shut down the entire refugee program either. And again, I think to take a step back, I think you were asking about whether there's a permissive nature to refugee admissions that isn't identical, isn't replicated with respect to immigrants and non-immigrants. But I think the government's position in the briefing has always been that both the admission of immigrants and non-immigrants and refugees is at the will of the government. So there's no distinction in terms of one has a right that the other does not. At least according to the government, it's permissive and they could decide whether or not that could continue. And again, I'd emphasize that the language, what the Supreme Court did not dwell on perhaps these differences in the laws governing refugee admissions and immigrant and non-immigrant visas. They certainly could have, but what they looked at as the salient feature was who will experience concrete hardship from the application of the executive order. And when you look at that particular question, it's clear that resettlement agencies will experience concrete hardship. So again, they meet the test that the Supreme Court articulated. And I just want to speak a little bit. Let's just go back for a moment, Ms. Simpson, back to the close familial relationship issue for just one second. What do you contemplate the Supreme Court was trying to convey when they used the term close familial relationship as opposed to immediate relatives, which is a common term of art used in the INA? Is it the same thing or does it really mean something different? I think it really means something different for two reasons. First of all, this is not a language plucked out of nowhere. The Supreme Court has in two opinions, considering family relationships, talked about close family relationships and said that in Moore in particular, that those include grandparents, they include aunts, uncles, nieces, nephews and cousins. And I think that Moore is an important case that could have well have been in the Supreme Court's mind, because it was about when there is a constitutional harm from the separation of family members. And in Moore, the determination was that separating grandparents, aunts, uncles, nieces, nephews and cousins could constitute that kind of harm. So I think that that is why close as opposed to immediate is important. Another reason is exactly contrary to what the government has been arguing. The INA provisions that govern who is eligible for an immigrant visa, that is the very, very rare prize of being permitted permanent residence in the United States, that provision refers to immediate family. And the Supreme Court chose not to use that language. It instead spoke of close family, which has these echoes of the Supreme Court's prior opinions. So I think that there is something important about that distinction. I think the government in that regard today was arguing that it's an administrable standard that necessitates looking to the INA. And it's a little bit confusing to understand why it would be more administrable to look at one set of family members and not all of them. And why not another? It's also difficult to see why it's more administrable to look at an INA provision that the government has had to itself expand. So the INA provisions that they're looking to do not include mother-in-laws. But the court said that mother-in-laws are, quote, clearly included. So it's not that the government is just looking at one INA provision and applying it directly. It's having to doctor that itself. Okay. If there are no further questions, I urge the court to affirm. Thank you. What's our standard of review on the refugee part? The overall standard of review is abuse of discretion, Your Honor. But it is, of course, per se, an abuse of discretion to commit a legal error. And the proper interpretation of the legal standards here of what counts as a close family relationship and what counts as a formal relationship with an entity are both legal questions. So if the district court erred, the court would reverse as a de novo matter. A couple of points I'd like to make on each of the two issues in the case. On close family, counsel didn't dispute that they have not identified a single provision of law, not in the immigration context or any other context, that picks up all of the relationships, they say. They rely most heavily on Moore. But they don't dispute that Moore does not cover sibling-in-laws. It doesn't cover in-law relationships. There is no history and tradition under Moore of family members living with their in-laws. The only thing that they get to cover in-laws is they point to one provision of the INA that covers alternative financial sponsors. Well, that provision covers grandparents, grandchildren, and in-laws. And that's it. It doesn't cover aunts and uncles. I'm sorry. If the Supreme Court had intended to limit its holding to immediate relatives, the term commonly used in the INA, they would have done so. It has a different meaning. They made it clear that an example of what they were thinking of was a mother-in-law, which is not something that's in the INA. Well, two points about that, Your Honor. First of all, our provision goes beyond immediate relatives. It covers, for example, siblings who aren't covered by the 1151 provisions, but they are covered by 1153. How about fiancés? Fiancés are essentially a two-step to getting to an immigrant visa. You can get a non-immigrant visa as a fiancé, and then once you get married, you can convert that into an immigrant visa as a spouse. Is the fiancé defined anywhere in the INA? Yes, there is a provision in the definition. As a close family relationship? It is something that gets you preferred treatment for a non-immigrant visa, which then immediately upon getting married gives you preferred treatment for getting an immigrant visa as a spouse. Again, though, Your Honor, if you don't want to look at immediate family member, we're fine with looking at where Congress used the phrase close family member. And in 1182, the one time it uses the phrase close family, it uses it our way, not their way. It covers parents, siblings, children, and spouses. Their only time where they point to anything where Congress used the phrase close family member, it covers grandparents, grandchildren, and siblings-in-law. It does not cover aunts and uncles. It does not cover nieces and nephews. More doesn't cover siblings-in-law. You would have to just sort of have a hodgepodge definition drawn from a whole source of areas, and that just doesn't make sense as to how to interpret the Supreme Court's standard for close family. If the Supreme Court's applying equitable factors, though, the principles of equity as they've been commonly understood, then why isn't it open-ended to assess who has a close familial relationship? Well, Your Honor, the context here is pretty important. They considered equity in drawing the balance that they did, but they've now drawn the balance, and the test is close family, and this is an injunction that the government has to comply with. And counsel says, well, it's not that hard now that the district court has set out what relationships are covered, but that ignores the fact that we had to determine what to do the day the Supreme Court ruled. Before the district court ruled, we had to determine how to comply with the Supreme Court's injunction, and their position is apparently that we should have done a word search of every INA provision on the books and every Supreme Court case ever decided, and put them all together and said what all relationships have ever been described as close, and that's what we should have done. And that's just simply not a reasonable way to interpret the Supreme Court's opinion on close family. Instead, a far more sensible way to interpret it is the Supreme Court had in mind precisely what the government had in mind in the EO when we referred to close family, which the Supreme Court pointed to. And that close family definition was parents, siblings, and children, and was drawn from the INA provisions that we've cited, and that is a far more administrable and more sensible way of drawing this line. In terms of the assurance piece, counsel didn't dispute that their interpretation would render the Supreme Court's stay meaningless. There would be no difference under their view as to whether the Supreme Court had ever issued the stay at all, and that, I submit, should basically be dispositive, and I think that's why the Supreme Court stayed the district court's ruling. If there are no further questions, thank you. Okay. Thank you, counsel.
judges: Hawkins, Gould, Paez